THE PEOPLE OF THE STATE OF NEW YORK ex rel. THE BUTTERICK COMPANY, Relator, *v.* JOHN F. GILCHRIST and Others, as and Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, July 1, 1925.

Taxation — corporation franchise tax under Tax Law, § 182 — doing business in this State — relator, though organized to manufacture and sell, is actually holding corporation — relator's sole assets consist of stocks and bonds of subsidiary corporations — indorsement of notes for subsidiaries is not doing business — purpose for which relator was organized is immaterial.

The relator was not doing business in the State of New York within the meaning of section 182 of the Tax Law, so as to render it liable for a franchise tax, though it was organized to manufacture and sell, since it appears that its sole assets consist of stocks and bonds of subsidiary corporations and that its sole income is from dividends on the securities so held.

The indorsement of notes by the relator for its subsidiaries does not constitute doing business within the meaning of the Tax Law.

It is immaterial that the relator was organized for the purpose of manufacturing and selling, for the question of whether or not it was doing business in this State is not to be determined by the certificate of incorporation.

COCHRANE, P. J., and VAN KIRK, J., dissent.

CERTIORARI issued out of the Supreme Court (after taking effect of the Civil Practice Act) and attested on the 27th day of September, 1924, directed to John F. Gilchrist and others, as and constituting the State Tax Commission of the State of New York, directing them to certify and return to the office of the clerk of the county of Albany all and singular their proceedings had on an application for a revision and resettlement of the relator's account for franchise taxes assessed under section 182 of the Tax Law for the years 1906–1919 inclusive.

By stipulation no question is raised in this proceeding with reference to the franchise taxes assessed against the relator for the

tax years 1917, 1918 and 1919. (See Tax Law, § 182, as amd. by Laws of 1916, chap. 333. Since amd. by Laws of 1922, chap. 408, and Laws of 1924, chap. 332.)

*Noble, Morgan & Scammell* [*Herbert Noble* and *Howard Seay* of counsel], for the relator.

*Albert Ottinger, Attorney-General* [*Wendell P. Brown* and *C. T. Dawes* of counsel], for the respondents.

McCANN, J.:

The relator was incorporated under the laws of the State of New York January 15, 1902. Its purposes are set forth in its certificate of incorporation as follows:

" *Second.* The purposes for which it is formed are to manufacture, prepare, print, publish and sell magazines, reviews, books, plates, patterns and standards of fashion and to do all things pertaining and incident to and connected with such business, including the manufacture of any and all material and supplies, useful in the business aforesaid; to hold, purchase, improve, mortgage and sell lands; to manufacture, purchase, or otherwise acquire; to hold, own, mortgage, pledge, sell, assign and otherwise dispose of, and to invest, trade and to deal in and with goods, wares, merchandise and property of every class and description, including the stocks, bonds and other evidences of indebtedness of any corporation, domestic or foreign, and to issue in exchange therefor its stock, bonds or other obligations."

The relator acquired the entire capital stock of various corporations and during the years in question by such ownership controlled eleven subsidiary corporations, foreign and domestic, some actively engaged in the State of New York in the manufacture of patterns and the publication and distribution of magazines and other publications. Its officers and directors were in many cases the officers and directors of the subsidiary companies. It was represented at the meetings of the stockholders of the subsidiaries by proxies, appointed by its board of directors. It maintained an office in the State of New York where its meetings were held, but it transacted no business except to receive the income from the dividends upon the stock and interest upon the bonds of its subsidiary corporations in which stocks and bonds its entire capital was invested. This income was deposited in a bank in the city of New York and distributed to its stockholders. It had no other funds in bank. No business of any nature whatever was done outside of the State. The relator owned no real or tangible personal property within the State and had no employees and no payrolls. Its officers received no salary. Its office was a nominal one and

it paid no office rent. It never participated in the manufacture and sale of any of the articles as authorized by its certificate of incorporation, although some of its subsidiary corporations were engaged in such business. During the years in question it appeared that the relator on several occasions indorsed notes for two of its subsidiaries. It does not appear how many of such indorsements were made, but it was shown that the amount in any one year might have been as high as $250,000 or $300,000 and that probably the average amount of the notes so indorsed was less than $100,000 during the eleven-year period in question, and that during the same period the average business of all of the subsidiary companies was about $8,000,000. It is upon these facts that the respondents base their chief argument, it being insisted that such acts of loaning credit constituted doing business within the State of New York.

The State Tax Commission has found that for the taxable years ending October 31, 1906, to October 31, 1916, inclusive, the corporation was liable for a franchise tax under section 182 of the Tax Law; such taxes were paid under protest and this proceeding is to review the assessment for the purpose of recovering such taxes, amounting in the aggregate to the sum of $31,561.44. In *Von Baumbach* v. *Sargent Land Co.* (242 U. S. 503) in the discussion of a case in which there was a similar statutory provision, and in referring to the many cases which had been before that court, it was said: " The fair test to be derived from a consideration of all of them is between a corporation which has reduced its activities to the owning and holding of property and the distribution of its avails and doing only the acts necessary to continue that status, and one which is still active and is maintaining its organization for the purpose of continued efforts in the pursuit of profit and gain and such activities as are essential to those purposes."

In the case of *Butterick Co.* v. *United States* (240 Fed. 539) the same question of taxation under the Federal Corporation Excise Tax Act of 1909 (36 U. S. Stat. at Large, 112, § 38) was discussed and the same state of facts arose upon the question of taxation for the year 1913. The court in that case held that no tax should be imposed as it could not be held that the relators were engaged in business in such a way as to subject them to the tax in question. The case cites 242 United States, 503 (*supra*). In that case the same question arose as to the indorsement of notes of a subsidiary corporation. The court said: " The indorsement by the Butterick Company of the notes of its subsidiary company was the only fact which is to be added to the facts before the court in the case of *United States* v. *Nipissing Mines Co.*, [206 Fed. 431], which was decided by the Circuit Court of this Circuit; but this is not suf-

ficient to differentiate that case from the action by the Butterick Company here under consideration. The indorsement was, if anything, less than a loan by the holding company, and I can hardly believe that a loan by a holding company to its subsidiary, without further direct participation in the activities of the latter, would render the holding company subject to the excise tax."

Error was taken to the United States Supreme Court in the *Butterick* case, above cited, and was dismissed on application of the Attorney-General (*United States* v. *Butterick Co.*, 248 U. S. 587).

In *People ex rel. Lehigh & N. Y. R. R. Co.* v. *Sohmer* (217 N. Y. 443) the Court of Appeals reviewed a tax assessment imposed under section 182 of the Tax Law. It is unnecessary to discuss all of the facts involved in that case. It is sufficient to say that it sustains the proposition above quoted and holds further that the words " doing business in this State " have one and the same meaning whether applied to a foreign or domestic corporation. A more recent case and one which reviews the many cases referred to is *People ex rel. Manila El. R. R. & L. Co.* v. *Knapp* (229 N. Y. 502), where there was a review of the determination of the Tax Commission with reference to taxation on business during the year 1916. It was held that in order to impose a tax there must be both " the doing of business and employment of capital * * * concurrently." The rule adopted in that case was that " the relator was not doing business in this State within the legislative and statutory intendment. The condition of doing business in this State, within that intendment, implies that the foreign corporation is accomplishing acts and activities within the State which the State might reasonably and with ordinary interstate comity interdict or prevent and the doing of which was a privilege which required governmental consent, supervision and control, and which necessitated or sought governmental opportunity and protection to be compensated or balanced by contributions through taxation to the burden of government." (See, also, *People ex rel. Wisconsin Edison Co.* v. *Gilchrist*, 212 App. Div. 840.) It was also held in the *Manila* case that " loans of the relator lacked the systematization, definiteness and continuity which are the essential characteristics of doing business within the purview of the Tax Law."

The attention of the court has been called to the many provisions of the certificate of incorporation showing authority on behalf of the relator to transact certain kinds of business within the State and to the fact that such business was transacted indirectly by its subsidiary corporation. It was held in *People ex rel. Goodwin Sand & Gravel Co.* v. *Law* (207 App. Div. 567, 570; appeal dismissed, 238 N. Y. 624): " The purposes for which the corporation was

organized are immaterial. The question for decision is the nature of its business transacted during the year 1918 and this would be true even if the corporation should during the next or any subsequent year change the nature of its business from that of a holding corporation to a business of a manufacturing, mercantile or commercial nature, in which case a different statute would apply to the taxation of its assets or income for that year."

The principal case cited by respondents is *People ex rel. Chicago Junction Railways & Union Stockyards Co.* v. *Roberts* (154 N. Y. 1). In that case, mentioned in 229 New York, 510 (*supra*), the facts are quite similar to the facts in the instant case, but as stated by the court: " We did not decide whether or not the foreign corporation was within the intendment of the statute doing business in this State and did decide that the corporation did not employ any part of its capital in this State." The argument of the respondent is based principally upon the dissenting opinion rather than upon the prevailing opinion. The rule laid down by the United States court has been followed in this State in case of both foreign and domestic corporations. The test established by that court has been approved; the rule for guidance has been adopted in the *Manila* case, and this same relator has received a favorable decision from the United States court under the same state of facts.

The determination of the State Tax Commission should be reversed, with fifty dollars costs and disbursements.

All concur, except COCHRANE, P. J., and VAN KIRK, J., dissenting.

Determination annulled, with fifty dollars costs and disbursements.