Williams, J.
 

 The sole matter of inquiry is the amount of franchise tax payable by The Cliffs Corporation for the year 1939.
 

 This excise is regulated by Sections 5495, 5498 and 5499, General Code, which, after being summarized in part and quoted in part, may be applied to the facts without setting the sections out in full.
 

 
 *345
 
 The tax payable by a domestic corporation organized for profit is a fee of one-tenth of one per cent upon the certified value (or base) for the privilege of exercising its franchise for the calendar year; but in no event is the fee to be less than $25.
 

 Ascertainment of the certified value involves two steps: (1) Fixing the determined value, and (2) applying thereto the prescribed formula.
 

 In the first step the value of the issued and outstanding shares of the corporation’s stock is fixed as of the date shown by the corporation’s annual report to have been the beginning of the then current annual accounting period. Such value is deemed to be the total value (as-shown by the books of the company) of its capital, surplus, undivided profits, and reserves, but exclusive of (a) proper and reasonable reserves for depreciation and depletion, (b) taxes for the year for which such report is made, (c) the item of good will when shown by certified balance sheet to be carried as an asset and (d) such further amount as the book value of assets (other than good will) exceeds the fair value thereof. The result is the determined value.
 

 In the second step the formula to be applied to the determined value is found in those portions of Section 5498, General Code, which will be quoted below in connection with the process of computation.
 

 As computed by the franchise tax division the determined value amounted to $20,284,355. Divided by two the quotient is $10,142,177.50. The first part of the formula shown in Section 5498 reads: “Take one part [$10,142,177.50] and multiply by a fraction whose numerator is the fair value of all the corporation’s property owned or used by it in Ohio and whose denominator is the fair value of all its property wheresoever situated * *
 

 The fair value of the corporation’s property owned and used in Ohio during the year involved was $20,-205,384 and the value of its total property “where
 
 *346
 
 soever situated” was $20,613,680. Omitting the fractional dollar, the application is made thus:
 

 Section 5498 proceeds: “Take the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year wherever transacted. ’ ’
 

 As it is agreed that no business was done outside Ohio the numerator and denominator in the fraction of this part of the formula would be equal whether business was done within the meaning of the statute or not.
 

 Appellant claims that no business was done in Ohio or elsewhere and, if so, the fraction would be zero over zero.
 

 Appellees’ claim is that business was done in Ohio and none elsewhere; therefore regardless of the amount of business the fraction would be one over one.
 

 This part of the formula, to show the respective claims of the parties, may be stated in the alternative thus:
 

 The certified value (better called the base) is then found by adding together the two results obtained by the application of the two. parts of the formula in the manner stated.
 

 The appellant’s contention, however, goes further than asserting that the correct fraction to be applied in the second part of the-formula was y Its contention is in reality twofold. Appellant contends that since the corporation was not doing business it could only be liable for a minimum fee of $25, but, if wrong in
 
 *347
 
 that contention, the appellant nevertheless insists that since no business was done the fraction in the second part of the formula, should be and the fee correspondingly reduced to $9,941.29, as hereinafter more fully explained.
 

 The contention that appellant is liable for the minimum fee only is grounded upon the theory that the liability for the franchise tax is based upon the doing of business. Consequently, since no business was done, appellant claims, the minimum only is chargeable. This position is too narrow. The tax imposed on a domestic corporation for profit is charged for the privilege of exercising its franchise. If the appellant was not doing business the fraction in the part of the formula expressing the ratio between business done inside and outside the state would be zero over zero. The multiplicand would be $10,142,177 (in round numbers), the multiplier zero (the equivalent of zero over zero) and the product zero. So if no business was done during the year involved, the amount of $9,941,-290 would be the base for the computatioxx of the fee of one-tenth of one per cent. The amount of the fee in that event would be $9,941.29. On the other hand, if business was done during the year (it being conceded that there was no business done outside Ohio in any event), the fraction ixx the second part of the formula would be 1 over 1 (the equivalent of 1) and the fee on that basis would be $20,083.47, the amount charged for collection from the appellant..
 

 The amount of the franchise tax turns, then, on whether business was done by appellant “during the year preceding the date of the commencement of its current annual accounting period,” that is, during the year 1938.
 

 Some authorities assert the rule that a holding corporation which is no more than an intei'mediary or instrumentality for its stockholders and acts only
 
 *348
 
 as a conduit in the receipt and distribution of dividends for stockholders, is not engaged in the doing of business.
 
 Welch Holding Co.
 
 v.
 
 Galloway,
 
 161 Ore., 515, 89 P. (2d), 559. Other cases are collected in the following annotations: 70 L. Ed., 678; 40 A. L. R., 1451; 75 A. L. R., 1242; and 98 A. L. R., 1511. There is, however, no supreme test for determining what constitutes “business doné” as the basis for determining the excise tax provided in our statutes. A few quotations may serve to show the trend of juristic thought with respect to holding companies that are more than mere “dry holders” of stock assets:
 

 “If the corporation was one that Congress had power to tax in this way, it is hard to say that it is not within the taxing acts. It was organized for profit and was doing what it principally was organized to do in order to realize profit. The cases must be exceptional, when such activities of such corporations do not amount to doing business in the sense of the statutes. The exemption ‘when not engaged in business’ ordinarily would seem pretty nearly equivalent to when not pursuing the ends for which the corporation was organized, in the cases where the end is profit. In our opinion the plaintiff was liable to the tax.”
 
 Edwards, Collector,
 
 v.
 
 Chile Copper Co.,
 
 270 U. S., 452, 70 L. Ed., 678, 46 S. Ct., 345.
 

 “This is a Michigan corporation whose articles of association contemplate that it shall have an office in Boston. It is a holding company and owns various corporate stocks and bonds and certain mineral lands in Michigan. Its activities in Massachusetts consist in holding stockholders ’ and directors ’ meetings, keeping corporate records and financial books of account, receiving monthly dividends from its holdings of stock, depositing the money in Boston banks and paying the same out, less salaries and expenses, as dividends to its stockholders three or four times a year. The exaction of a tax for the exercise of such corporate faculties
 
 *349
 
 is within the power of the state. Interstate commerce is not affected.”
 
 Cheney Bros. Co.
 
 v. Massachusetts, 246 U. S., 147, 62 L. Ed., 632, 38 S. Ct., 295. That case r involved “an excise tax imposed by Massachusetts in 1913 on each of seven foreign corporations on the ground that each was doing a local business in the state. ’ ’
 

 These passages may be deemed characteristic of language that may be found elsewhere in the authorities. However it must be conceded that there is a dearth of cases in point.
 

 It is not necessary to determine the exact line of demarcation between holding companies that are doing business and those that are not. It is only necessary now to ascertain into which class the appellant falls.
 

 During appellant’s existence, it has purchased stock of the Inland Steel Company under rights issued to it as shareholder of that company, has sold at a profit part of the stock so purchased, and has borrowed and lent large sums of money to further transactions in appellant’s interest. These activities show that appellant, during the years of its existence, was more than a passive holder of shares of stock in corporations engaged in the iron and steel industry. The events of all that period must be given consideration for they are competent, material and relevant in determining the real purpose of incorporation and the character of the enterprise; so in determining.whether appellant was doing business in 1938, transactions in previous years are entitled to weight. Lending, borrowing, acquiring or disposing of stocks did not take place during that particular year but did to some extent during the previous period of existence. Although in the basic year 1938 there was no corporate action except the holding of stockholders’ and directors’ meetings, the paying of dividends, the making of reports required by governmental regulations and other essentials with respect to the proper management of
 
 *350
 
 the affairs of appellant, such facts are not conclusive in determining whether the appellant was then, doing business. Rather what was done in the basic year should be interpreted in the light of previous years, especially in view of the fact that there was no change in plans or methods.
 

 Weighed in the light of past experiences, what significance should be attached to corporate undertakings of 1938? In other words was there business done during that year?
 

 The appellant was organized,
 
 inter alia,
 
 to acquire and manage substantial stock interests in various iron and steel companies and according to the plan of organization did acquire stock in such companies valued at many millions of dollars. It was thus in a position to wield a considerable influence in the iron and steel industry though not owning a majority interest in any outside corporation whose shares of stock had been acquired, other than The Cleveland-Cliffs Iron Company, which, by reason of dividend defaults, has been subject to control by the holders of its preferred stock since September 15, 1931.
 

 Appellant’s ownership of iron and steel stocks, not being merely quiescent, served to accomplish the very objective for which the corporation was created and has since existed, namely, making money out of the portfolio of stocks comprising its assets. Success in the undertaking required good management, and good management involved intelligent and wise participation in the affairs of the various iron and steel companies to the full extent to which appellant as shareholder could participate and assert influence. The legal aspect of the case is not changed because the appellant-paid to The Cleveland-Cliffs Iron Company the sum of $10,000 “for furnishing management, accounting and other services.” Whether such services were performed under direct control of the appellant or were hired to be done by its agents, as they were,
 
 *351
 
 the responsibility of the appellant’s officers and directors for proper performance would be- the same. By- procuring another corporation to perform such services for compensation, the officers and directors of the appellant were not relieved of the duty that rested upon them to see that the affairs of appellant were well managed. The care and preservation of assets running into millions of dollars in value in behalf of 3,400 shareholders is confessedly a business in itself. If good management had required the sale of some of the stock assets during the basic year, the duty to act in respect thereto would have rested upon the officers and directors of the appellant, and if upon such a sale, business prudence required the re-investment of the proceeds, the obligation to conserve the corporate interests was likewise on the same officers and directors.
 

 The business in which the appellant was engaged was gathering and distributing profits growing out of the iron and steel industry, by the management and ownership of stocks in corporations engaged in such industry, and it was to engage in that business that the appellant was organized and has continued in existence. Appellant’s activities in the care and management of those stocks during the year 1938 constituted business done within the meaning of the statute.
 

 The decision of the Board of Tax Appeals is affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Turner, Hart, Zimmerman and Bettman, JJ., concur.
 

 Matthias, J., not participating.