*406
 
 Matthias, J.
 

 The question presented to this court requires the construction of the term, “business done by the corporation,” as used in Section 5498, General Code.
 

 The commissioner contends that Standard during each of those years was doing business in Ohio and the increased value was based upon that premise; Standard claims that the assessments are erroneous because on the facts it was not doing business in Ohio during the period in question.
 

 The method of calculating the amount of franchise tax due from a corporation was fully analyzed by this court in the case of
 
 Cliffs Corp.
 
 v.
 
 Evatt, Tax Commr.,
 
 138 Ohio St., 336, 345, 35 N. E. (2d), 144. Briefly stated, the amount of franchise tax is, under Section 5498, General Code, based in part on the proportion which the property owned or used in Ohio bears to the total property owned by the corporation, and in part upon the percentage which the business done in Ohio by the corporation bears to its total business. It is this latter factor which is in controversy here, there being no dispute about the computation involving the value of property owned.
 

 The facts considered by the Board of Tax Appeals were stipulated and may be concisely stated as follows ;
 

 The articles of incorporation of Standard authorized it “to enter into, assist, promote, conduct, perform or participate in any and all kinds of commercial, mercantile, mining, transportation or industrial enterprise, business, or work, contract, undertaking, venture or operation in the United States or in any foreign country.” It was authorized “to act as agent for consignor and consignee in the shipment and forwarding of goods, wares, merchandise and freight of every
 
 *407
 
 kind, character and description.” Other provisions of the articles of incorporation granted equally broad authority.
 

 However, the actual operations carried on by Standard, which it contends were insufficient to constitute doing business within this state, have also been stipulated and are disclosed by the financial statements of the corporation and by the record of the proceedings of the board of directors during the years in question.
 

 The statements furnished by Standard show that its assets consisted almost entirely of shares of stock of National Carloading Corporation, which investment Standard retained throughout the years in question, some of the shares having been purchased during the years 1944 and 1945. The number of shares held (588,105) was more than 98 per cent of the capital stock of National Carloading Corporation.
 

 The financial statements disclose also that Standard received as dividends on these shares the sum of $29,294.65 in 1942 and $58,810.50 in 1945; no other income was shown for the years in question; and from 1940 to 1945 Standard paid no dividends to its shareholders.
 

 As of December 31, 1940, the balance sheet of Standard shows current liabilities consisting mainly of three accounts payable as follows:
 

 Erie Land & Improvement Company ...... $93,000.
 

 The Chesapeake & Ohio Railway Company .. $93,000.
 

 Pere Marquette Railway Company ........ $93,000.
 

 The balance sheet as of December 31, 1945, shows that the liability to Erie Land '& Improvement Company had been liquidated and a liability to Southern Tier Development Company, also in the sum of $93,-000, had been incurred.
 

 The question of law presented on the . facts is
 
 *408
 
 whether Standard by the activities recited was doing business in this state and was as a consequence liable for franchise taxes assessed by the commissioner.
 

 The commissioner apparently based his assessment on the
 
 Cliffs Corp. case, supra,
 
 claiming that the activities of Standard were similar to those which this court in that case held constituted “doing business.”
 

 The Board of Tax Appeals in reversing the assessment by the commissioner also relied in part on the
 
 Cliffs Corp. case,
 
 holding, however, that the facts in the instant ease were materially different from those in the
 
 Cliffs Corp. case.
 
 The holding in the
 
 Cliffs Corp. case
 
 is fully stated in paragraph three of the syllabus, which is as follows:
 

 “C. Corporation was organized in 1929 for the purpose of acquiring large blocks of stock in certain iron and steel corporations, including all the common stock of The Cleveland-Cliffs Iron Company. Upon organization C. Corporation acquired and has since owned, cared for and managed such stock and other stock subsequently acquired as a money-making enterprise in the iron and steel industry. During the period after organization but before 1938, C. Corporation borrowed and lent money, to further transactions in its interest, acquired additional stock under rights issued to it as a stockholder in one of such iron and steel companies and sold part of such stock at a profit. C. Corporation has paid to The Cleveland-Cliffs Iron Company, $10,000 per year for management, accounting and other services and the officers of C. Corporation have received no compensation for their official services. During the year 1938, there were no transactions other than those necessary for the care and management of stocks owned and held — no stock was acquired or sold, no money borrowed or lent and no action was taken with respect to change in plans and
 
 *409
 
 methods. Other purposes were specified in the articles of incorporation but none of them was ever carried out.
 
 Held:
 
 C. Corporation was doing business in the year 1938 within the meaning of Section 5498, General Code, which provides that business done by a corporation shall be considered in determining the amount of the franchise tax.”
 

 The Cliffs Corporation, as shown by the above statement, did no business in 1938, but because of the activities of the corporation over a period of years, it was held subject to franchise tax based upon business done because of the general policy theretofore followed by the corporation. The opinion in the
 
 Cliffs Corp. case
 
 indicates that the corporation, through its holdings in other corporations engaged in the iron and steel industry, had exercised authority and had retained throughout the year in question such controls.
 

 A different situation is presented here. The record is devoid of evidence that Standard influenced in any way the policies or activities of the subsidiary National Carloading Corporation. The record of the board of directors shows only the execution of proxies whereby the stock held by Standard was voted; that record does not show active intervention in the management of National Carloading Corporation, unless such may be inferred from the execution of proxies. The holding of this large block of shares of the National Car-loading Corporation, the receiving of dividends for two separate years and the refinancing of a portion of Standard’s current liabilities were practically its only transactions.
 

 The holding by a corporation of property does not of itself constitute doing business. This situation is not altered because such property has earned dividends which are paid to the holding corporation and by-it disbursed to the shareholders. In the absence of
 
 *410
 
 the showing of some active participation for profit in a business activity, the corporation is not doing business. The instant case differs also from the
 
 Cliffs Corp. case,
 
 in that the record before us discloses that throughout all the years in question there was an absence of active participation by Standard in the management of the National Carloading Corporation, or in transactions which could properly be denominated “business done,” whereas, as above stated, The Cliffs Corporation over a period of years had been actively engaged in business management.
 

 The decision of the Board of Tax Appeals is hereby affirmed.
 

 Decision affirmed.
 

 Weygandt, C. J., Hart, Zimmerman, Stewart, Turner and Taft, JJ., concur.