NATIONWIDE CORP., APPELLANT, *v.* SCHNEIDER, TAX COMMR.,
ET AL.; APPELLEES.

[Cite as Nationwide Corp. v. Schneider, Tax Commr., 7 Ohio St. 2d 59.]

(No. 39895—Decided June 29, 1966.)

*Messrs. Dresbach, Crabbe, Newlon, Bilger, Brown & Jones,
Mr. E. James Hopple, Messrs, Thornbury, Howell & Jeffries*
and *Mr. George W. Schmidt,* for appellant.

*Mr. William B. Saxbe,* attorney general, and *Mr. Thomas
B. Moyer,* for appellees.

Brown, J. The tax overpayment which is claimed was payable upon the total value of the stock of the corporation issued and outstanding. Section 5733.05, Revised Code, requires the Tax Commissioner to divide that value into two equal parts. That section further requires the Tax Commissioner to determine the fraction which represents the ratio of the corporation's property in Ohio to all its property wherever situated and to determine the fraction which represents the ratio of the corporation's business done within this state to all its business wherever done. The Tax Commissioner is then required to apply one of the fractions against one of the two parts of the company's total value and the remaining fraction against the remaining part of the company's total value for the purpose of determining the base upon which the Ohio franchise tax is payable.

The appellant does not contest the tax assessed against that one-half of the certified value which is based on the application of the property-value ratio. It does, however, contest the assessment of the tax which is based upon application of the "business-done" ratio formula. It claims that the company is a quiescent holding company which, under this court's holding in *Standard Carloading Corp.* v. *Glander, Tax Commr.*, 152 Ohio St. 404, was not engaged in a profit-making activity and was not doing business within the meaning of Section 5733.05. Revised Code. If this is true, the fraction applicable to business done would be zero over zero. As a result, one half of the company's total value would not be considered in arriving at the base subject to the franchise tax.

The Tax Commissioner and the Board of Tax Appeals disagreed with this position, argued that the activities in which the company had engaged in the year in question amounted to doing business as defined in this court's holding in *Cliffs Corp.* v. *Evatt, Tax Commr.*, 138 Ohio St. 336, and did not fall within *Standard Carloading Corp.* v. *Glander, Tax Commr., supra.*

*Cliffs Corp.* v. *Evatt, Tax Commr., supra,* recognizes the rule that a holding company which is no more than an intermediary or instrumentality for its shareholders and acts only as a conduit in the receipt and distribution of dividends for shareholders is not engaged in the doing of business. However,

some of the acts discussed in *Cliffs* as being evidence of "doing business" are discussed in *Standard Carloading Corp.* v. *Glander, Tax Commr., supra,* as being proper activities of "quiescent" or "dormant holding companies." For example, in *Cliffs Corp.* v. *Evatt, Tax Commr., supra,* it is said:

"The business in which the appellant was engaged was gathering and distributing profits growing out of the iron and steel industry, *by the management and ownership of stocks* in corporations engaged in such industry, and it was to engage in that business that the appellant was organized and has continued in existence. Appellant's activities in the care and management of those stocks during the year 1938 constituted business done within the meaning of the statute." (Emphasis added.)

On the other hand, *Standard Carloading Corp.* v. *Glander, Tax Commr., supra,* clearly holds that such activities are "not doing business," even though additional shares are purchased during the year in question, dividends are received and proxies are executed which authorized the voting of the shares held in the subsidiary company.

To the extent that *Cliffs Corp.* v. *Evatt, Tax Commr., supra,* is irreconcilable with *Standard Carloading Corp.* v. *Glander, Tax Commr., supra,* the latter case should be considered as overruling the former. The two cases agree that holding companies which participate and assert influence in the management of the companies whose stocks make up their investment portfolio are doing business. In *Standard Carloading Corp.* v. *Glander, Tax Commr., supra,* the presence of participation and influence in the affairs of the subsidiary company were found not to exist as a matter of fact and in the opinion in that case the following appears at page 409: "In the absence of the showing of some active participation for profit in a business activity the corporation is not doing business."

Nationwide Corporation points to the statement of the Board of Tax Appeals in its opinion which says: "* * * the evidence of any intervention or active management by the Nationwide Corporation in the affairs of its subsidiaries is very small and *may only be* assumed from such facts as the interlocking of appellant's officers and directors with those of the subsidiaries," the appellant corporation was "actively engaged in the invest-

ment business and was not a dormant holding corporation as was the *Standard Carloading Corporation.*"

This assumption is a violent one, not borne out by the evidence. In *Continental Baking Corp.* v. *Higgins, Collr.* (C. C. A. 2), 130 F. 2d 164, 167, the suggestion that such an assumption could stand in the presence of evidence refuting it was rejected by Judge Augustus N. Hand, in these words:

"The suggestion that the identity of the directors and officers of the various affiliated corporations indicates *that the plaintiff was actively interfering with the conduct of the business of the operating corporations and thereby had a status other than that of a mere holding company* is not borne out by the evidence. The statement of its president to the contrary is met only by evidence elicited on cross-examination of the secretary-treasurer of all the companies who testified that directors of Continental Baking Corporation were 'kept * * * informed of our operations' and that the financial statements of the subsidiaries were discussed and reviewed. To have done less than these directors did would have been to neglect their obvious duties and their legal obligations. *They were bound not only to be familiar with the situation but as fiduciaries for the sole stockholder, to keep themselves in a position,* in which by removal of the directors of the operating companies at the next corporate elections or by other appropriate means *they would be able to check any neglect or abuse on the part of such companies. To maintain the status as a holding company was far different from actively interfering in the business of the subsidiaries * * *.*" (Emphasis added.)

It seems to us that Nationwide passes the test laid down by both *Carloading* and *Cliffs* in that it did not actively participate or interfere in the business of its subsidiaries. Hence, its relationship to its subsidiaries is consistent with its claimed status as a quiescent holding company.

The Board of Tax Appeals found also that Nationwide was "actively engaged in the investment business."

Since its incorporation in 1955, appellant has held substantially all the voting shares of the same eleven subsidiary corporations. There is no evidence that any of these were held for the purpose of resale at a profit so as to make these holdings

the stock-in-trade of the Nationwide Corporation. These holdings and acts of management connected therewith were entirely consistent with appellant's status as a holding company and do not amount to doing business as an "investment company or otherwise." Nor do the appellant's casual sales and acquisitions of stock constitute evidence that Nationwide "engaged in numerous buying and selling activities" and in the "active trading and selling of stock" as found by the Board of Tax Appeals and the Tax Commissioner.

The Tax Commissioner points to three transactions: the sale of Northwestern National Life Insurance Company stock in 1962; the sale of the Brunson Savings and Loan Company stock in 1963; and the purchase of Northern Life Insurance Company in 1963, emphasizing the Northwestern National sale because of the large gain it produced.

The Northwestern National Life Insurance Company stock is the only significant holding which appellant bought and sold during the years in question. Presumably this stock was acquired for the same reason as the other stocks appellant owned —as a promising addition to its holdings. The record, however, makes it clear that vexatious legal problems and litigation followed upon the heels of this acquisition. Appellant's stock holdings in Northwestern, a stock and mutual company, constituted a majority of Northwestern's outstanding stock (220,000 shares); however, Northwestern's participating policyholders also had voting rights of more than 500,000 votes and the company was controlled by the combined vote of shareholders and participating policyholders. Appellant was involved in at least two lawsuits concerning voting rights in Northwestern, one in the United States District Court in Minnesota involving the validity of certain quorum provisions in Northwestern's articles of incorporation, and the other brought by appellant in a Minnesota District Court to obtain lists of shareholders and participating policyholders of Northwestern. Some of the details of the highly technical legal disputes concerning the quorum provisions and voting rights are to some extent set forth in the record, and it is apparent that such was the reason for the sale. Thus it is clear that appellant was not actively buying, selling and trading in stocks for a profit.

64

Northern Life Insurance Company was acquired by appellant obviously as a replacement holding for the Northwestern National stock which had to be disposed of by appellant for the reasons set forth above. The sale of the Brunson Savings and Loan Association stock was at most an isolated and casual transaction when viewed in light of appellant's entire financial history.

Our holding in this regard is supported by the great weight of authority. *General Ribbon Mills, Inc., v. Higgins, Collr.* (C. C. A. 2), 115 F. 2d 472; *Rose, Collr., v. Nunnally Inv. Co.* (C. C. A. 5), 22 F. 2d 102; *United States v. Three Forks Coal Co.* (C. C. A. 3), 13 F. 2d 631; *Continental Baking Corp. v. Higgins, Collr., supra.*

Nor was the fact that Nationwide Corporation borrowed money to further its transactions sufficient to constitute "doing business" under the statute. The opinion in *Standard Carloading Corp. v. Glander, Tax Commr., supra,* at page 407, reveals liabilities incurred by that company in amount of approximately $300,000 which were not considered as evidence that the company was doing business. See, also, *People, ex rel Butterick Co., v. Gilchrist et al., Tax Comm.,* 213 App. Div. 533, 211 N. Y. Supp. 75, affirmed, 241 N. Y. 591; *State, ex rel State Corp. Comm., v. Old Abe Co.,* 43 N. M. 367, 94 P. 2d 105.

Nor does the breadth of the purpose clause of the involved corporation bear upon our problem, since it is business done or not done which controls rather than prospective purpose or power. *Goodyear Inv. Corp. v. Campbell, Collr.* (C. C. A. 6), 139 F. 2d 188. Whether a corporation is "doing business" within the meaning of Section 5733.05, Revised Code, depends upon the facts in each case.

The contested portion of this tax is payable upon that part of one-half the total value of the company's stock issued and outstanding which is represented by a fraction indicating the ratio between business done in the state and total business. In view of this fact, it is unreasonable in the overall to consider as acts of business casual transactions done incidental to the operation of a quiescent holding company. More reason would exist to consider casual or incidental acts as "doing business"

if the tax were directly upon the dollar volume of business done.

To the extent that Nationwide Corporation subsidiaries have engaged in business within the state of Ohio, each can be assumed to have paid its franchise tax on the same basis as other corporations.

Since the findings of the board are unsupported by the evidence and its legal conclusions were in part based upon statements in *Cliffs Corp.* v. *Evatt, Tax Commr., supra*, which we consider to have been overruled by our holding in *Standard Carloading Corp.* v. *Glander, Tax Commr., supra*, the decision is unreasonable and unlawful and is, therefore, reversed.

*Decision reversed.*

TAFT, C. J., O'NEILL and DOYLE, JJ., concur.
ZIMMERMAN, MATTHIAS and HERBERT, JJ., dissent.

DOYLE, J., of the Ninth Appellate District, sitting for SCHNEIDER, J.

ZIMMERMAN, J., dissenting. I agree with both the Tax Commissioner and the Board of Tax Appeals that the extensive activities of the Nationwide Corporation in acquiring, managing, manipulating, and selling stock in insurance and other companies during the years in controversy, 1960 through 1963, constituted "doing business" within the holding of this court in *Cliffs Corp.* v. *Evatt, Tax Commr.*, 138 Ohio St. 336, 35 N. E. 2d 144, and thereby it became subject to the payment of corporate franchise taxes under the provisions of Section 5733.05, Revised Code.

MATTHIAS and HERBERT, JJ., concur in the foregoing dissenting opinion.