DIAMOND FINANCIAL HOLDINGS, INC., APPELLEE,
*v.* LIMBACH, TAX COMMR., APPELLANT.

[Cite as *Diamond Financial Holdings, Inc.*
*v. Limbach* (1993), 67 Ohio St.3d 228.]

(No. 92–1514—Submitted May 25, 1993—Decided September 8, 1993.)

*Jones, Day, Reavis & Pogue* and *Roger F. Day,* for appellee.

*Lee I. Fisher,* Attorney General, *Richard C. Farrin* and *Steven L. Zisser,* Assistant Attorneys General, for appellant.

*Per Curiam.* Under R.C. 5733.01(A), the franchise tax is charged against a domestic corporation organized for profit "for the privilege of exercising its franchise during the calendar year in which such amount is payable," and against a foreign corporation "for the privilege of doing business in this state, owning or using a part or all of its capital or property in this state, or holding a certificate of compliance with the laws of this state authorizing it to do business in this state

during the calendar year in which such amount is payable." According to R.C. 5733.01(B):

"A corporation is subject to the tax imposed by this chapter for each calendar year that it is so organized, doing business, owning or using a part or all of its capital or property, or holding a certificate of compliance on the first day of January of that calendar year."

R.C. 5733.04(F) defines "tax year" as "the calendar year in and for which the tax provided by this chapter is required to be paid." R.C. 5733.04(E) defines "taxable year" as:

"[T]he year or portion thereof upon the net income of which the value of the taxpayer's issued and outstanding shares of stock is determined or the year at the end of which the total value of the corporation is determined."

R.C. 5733.05 directs the determination of the value of a corporation's issued and outstanding stock. Under division (A), the net worth basis, the commissioner, after ascertaining the net worth of the corporation, determines the base on which the tax is computed under R.C. 5733.06 as follows:

"[D]ivide into two equal parts the value as determined in division (A) of this section of the issued and outstanding shares of stock of each corporation filing such report. Take one part and multiply it by a fraction whose numerator is the net book value of all the corporation's property owned or used by it in this state, and whose denominator is the net book value of all its property wherever situated * * *. *Take the other part and multiply it by a fraction whose numerator is the value of the business done, measured by sales of tangible personal property, by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period, and whose denominator is the total value of its business, measured by sales of tangible personal property, during said year wherever transacted.*

" * * * *

"*In the case of corporations whose business does not consist of the making of sales of tangible personal property and to which the sales numerator and denominator cannot apply, but which business consists of such activities as receiving commissions, rents, interests, dividends or distributions, and fees, the fraction shall be determined by allocating such business activities in and out of this state according to their situs.*" (Emphasis added.)

The commissioner then applies the rates specified in R.C. 5733.06 to the tax base to charge the tax. The commissioner collects the higher amount calculated on the net worth or net income basis.

In Propositions of Law Nos. One and Two, the commissioner argues that whether a corporation was "doing business" for the "business-done" factor of R.C.

5733.05(A) for a tax year must be based on the corporation's activities during the year preceding the tax year, its taxable year. Furthermore, the commissioner maintains that Diamond was doing business for tax year 1984 because its employees managed the affairs of the subsidiaries until March 31, 1983 of the taxable year preceding tax year 1984.

Diamond responds that whether a corporation is a quiescent holding company may be determined by its corporate structure and activities as they existed both prior to and after January 1 of the tax year for which it claims that status. It also argues that the BTA's factual determination that Diamond was a quiescent holding company for tax year 1984 is irreversible since it is supported by probative evidence.

The BTA and the parties have lost sight of what is taxed by focusing simply on whether and when Diamond did business. The tax is not on doing business; the tax is levied on holding a corporate franchise which enables the corporation to do business in a corporate form. In *Cliffs Corp. v. Evatt* (1941), 138 Ohio St. 336, 347, 20 O.O. 442, 447, 35 N.E.2d 144, 149–150, we explained this concept:

"The contention that appellant is liable for the minimum fee only is grounded upon the theory that the liability for the franchise tax is based upon the doing of business. Consequently, since no business was done, appellant claims, the minimum only is chargeable. This position is too narrow. The tax imposed on a domestic corporation for profit is charged for the privilege of exercising its franchise. If the appellant was not doing business the fraction in the part of the formula expressing the ratio between business done inside and outside the state would be zero over zero. * * * On the other hand, if business was done during the year (it being conceded that there was no business done outside Ohio in any event), the fraction in the second part of the formula would be 1 over 1 * * *.

"The amount of the franchise tax turns, then, on whether business was done by the appellant 'during the year preceding the date of the commencement of its current annual accounting period,' that is, during the year 1938 [for tax year 1939]." See, also, *Woodland Gardens Apts., Inc. v. Porterfield* (1968), 16 Ohio St.2d 56, 57, 45 O.O.2d 332, 333, 242 N.E.2d 580, 581.

Accordingly, the corporation owes a franchise tax for the privilege of exercising its corporate franchise to do business in the ensuing tax year, whether it in fact does business in the ensuing year. This latter fact, of course, is not known on January 1 of the tax year. The amount of tax due, on the net worth basis, is measured by applying a property factor to one-half of a corporation's net worth and a business-done factor to the other one-half. The business-done fraction is the ratio of business done in Ohio to business done everywhere, in the year preceding commencement of the current annual accounting period. R.C. 5733.05. (Diamond's annual accounting period coincides with the calendar year.) If a

corporation did no business in this preceding year, it has no business-done factor to apply to one-half of its net worth.

According to *Nationwide Corp. v. Schneider, supra,* 7 Ohio St.2d at 61, 36 O.O.2d at 50, 218 N.E.2d at 613, a corporation is not doing business if it does not have " 'some active participation for profit in a business activity,' " quoting *Std. Carloading Corp. v. Glander* (1949), 152 Ohio St. 404, 410, 40 O.O. 403, 405, 89 N.E.2d 575, 577. The *Nationwide* court extracted from *Cliffs Corp. v. Evatt, supra,* the rule "that a holding company which is no more than an intermediary or instrumentality for its shareholders and acts only as a conduit in the receipt and distribution of dividends for shareholders is not engaged in the doing of business." *Id.,* 7 Ohio St.2d at 60, 36 O.O.2d at 49, 218 N.E.2d at 613. Moreover, "[w]hether a corporation is 'doing business' within the meaning of Section 5733.05, Revised Code, depends upon the facts in each case." *Id.* at 64, 36 O.O.2d at 51, 218 N.E.2d at 615.

In this case, the employees who managed the subsidiary corporations until March 31, 1983 were Diamond's employees in name only. The subsidiaries were embryonic and needed few employees to operate them. Diamond accounted for, and filed reports on, them to administer the various companies and their payrolls economically. In fact, on the April 1, 1983 transfer date, business operations continued without anyone missing a beat. Thus, Diamond transacted no business itself in the preceding year and need not include a business-done calculation in its net worth base. Accordingly, we affirm the BTA's decision.

Next, in Proposition of Law No. Three, the commissioner argues that the legislature has overruled the quiescent holding company decisions in amending R.C. 5733.05. Diamond denies that the amendments affected these decisions.

Former G.C. 5498 (now R.C. 5733.05) read as follows:

" * * * [T]ake the other part and multiply by a fraction whose numerator is the value of the business done by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period and whose denominator is the total value of its business during said year wherever transacted." 113 Ohio Laws 636, 638.

Commissioner's Rule No. 276, promulgated in 1939, see *Westinghouse Elec. Corp. v. Porterfield* (1970), 23 Ohio St.2d 50, 51–52, 52 O.O.2d 173, 173–174, 261 N.E.2d 272, 273–274, stated:

"Corporations, whose business does not consist in the making of sales and to which Rule 275 cannot apply [sales of tangible personal property] but which business consists in such activities as receiving commissions, rents, interest, dividends, fees, etc., shall be determined by allocating such business activities in and out of Ohio according to their situs."

Effective December 1, 1967, the General Assembly enacted Am.Sub.S.B. No. 350, 132 Ohio Laws 1975–1976, which amended R.C. 5733.05 to read:

" * * * [T]ake the other part and multiply by a fraction whose numerator is the value of the business done, *measured by sales of tangible personal property,* by the corporation in this state during the year preceding the date of the commencement of its current annual accounting period, and whose denominator is the total value of its business, *measured by sales of tangible personal property,* during said year wherever transacted.

*"To the extent that the value of business done in this state is measured by sales of tangible personal property, it shall, for the purpose of this section and of section 5733.03 of the Revised Code, mean sales where such property is received in this state by the purchaser. In the case of delivery of tangible personal property by common carrier or by other means of transportation, the place at which such property is ultimately received after all transportation has been completed shall be considered as the place at which such property is received by the purchaser. Direct delivery in this state, other than for purposes of transportation, to a person or firm designated by a purchaser constitutes delivery to the purchaser in this state and direct delivery outside the state to a person or firm designated by a purchaser does not constitute delivery to the purchaser in this state, regardless of where title passes or other conditions of sale.*

*"Corporations, whose business does not consist in the making of sales of tangible personal property and to which the sales numerator and denominator cannot apply but which business consists in such activities as receiving commissions, rents, interests, dividends, and fees shall be determined by allocating such business activities in and out of Ohio according to their situs."* (Italicized material was new.)

The amendment sets forth rules on determining where sales occurred and codifies the commissioner's business-done rule. This rule existed when we announced the quiescent holding company decisions and is law if it agrees with relevant statutes and is reasonable. *Ohio Academy of Nursing Homes, Inc. v. Barry* (1990), 56 Ohio St.3d 120, 127, 564 N.E.2d 686, 693. Thus, the amendments do not affect the quiescent holding company decisions.

Accordingly, we affirm the decision of the BTA.

*Decision affirmed.*

Moyer, C.J., A.W. Sweeney, Douglas, F.E. Sweeney and Pfeifer, JJ., concur.

Wright, J., dissents.

Resnick, J., not participating.

WRIGHT, J., dissenting. I agree with the majority that a corporation owes a franchise tax for the privilege of exercising its corporate franchise to transact business in an ensuing tax year. I also agree with the majority that a quiescent holding company need not apply a business-done fraction to one-half of its net worth if it did not actively participate for profit in a business activity in the preceding taxable year. However, I strongly disagree with the majority that Diamond Financial Holdings, Inc. did not transact any business in the 1983 taxable year, and, thus, conclude that it must pay a tax calculated on this business done for the 1984 tax year.

In *Std. Carloading Corp. v. Glander* (1949), 152 Ohio St. 404, 40 O.O. 403, 89 N.E.2d 575, syllabus, we held:

"An Ohio corporation whose sole activity is the holding of substantially all the shares of another corporation, the collection of dividends thereof and their distribution to the former's shareholders, is not doing business in this state within the meaning of the provisions of Section 5498, General Code [now R.C. 5733.05], even though the former corporation purchases additional shares of such other corporation and receives dividends from and executes proxies for the voting of shares, where the former corporation does not actively intervene or otherwise engage in the management of the subsidiary corporation either during the period involved or at any time prior thereto. (*Cliffs Corp. v. Evatt, Tax Commr.* [1941], 138 Ohio St. 336 [20 O.O. 442, 35 N.E.2d 144], distinguished.)"

In *Nationwide Corp. v. Schneider* (1966), 7 Ohio St.2d 59, 36 O.O.2d 48, 218 N.E.2d 611, paragraph two of the syllabus, we held:

"If there is no active participation by a holding company in the management of its subsidiary companies, the fact that the holding company engages in casual sales and acquisitions of stock and sales of its interests in other companies does not constitute 'doing business,' within the meaning of Section 5733.05, Revised Code, if such transactions, viewed in the light of such holding company's history, appear to be isolated and are not consummated specifically for purposes of profit making."

Thus, and conversely, if the holding company actively participates in the management of the subsidiaries in the taxable year, it is transacting business on which it must calculate the franchise tax for the ensuing tax year.

On cross-examination, counsel for the commissioner and the individual who was Diamond's president during the disputed taxable year engaged in the following colloquy:

"Q. You had indicated that the business purpose of Diamond Financial Holdings was simply to serve as a holding company for all the financial services companies, I guess the corporate umbrella of Dana Corporation.

"A. For the financial service group, yeah.

"Q. But initially at least through the first part of 1983 and, in fact, it also was actively engaged, to some extent, in the management of those financial service companies, was it not?

"A. Actually, I don't believe it was.

"Q. Well, you said a lot of them didn't have any employees.

"A. The employees were employed in Diamond in name only. They spent their time doing business for the accounts of Potomac Leasing and Shannon Properties and some of the other subsidiaries.

"Q. But they were employees of Diamond Financial Holdings, Inc.?

"A. Yes. But there was nothing to do for Diamond, so they were doing it on behalf of the other companies.

"Q. But they were 100 percent owned subsidiaries of Diamond Financial Holdings, Inc.?

"A. That's true.

"Q. And employees of Diamond Financial Holdings, Inc., were the only employees in many regards who exercised any management over these subsidiaries?

"A. That's true.

"Q. So any business decisions had to have necessarily been made by Diamond Financial Holding Company employees?

"A. Prior to March 31st of 1983.

"Q. And those employees would obviously be controlled by the officers and/or directors of Diamond Financial Holdings, Inc.?

"A. Or other employees.

"Q. Or other employees of—

"A. Diamond Financial Holdings—

"Q. Diamond Financial?

"A. —Inc."

Based on this testimony, and despite Diamond's protestations that these employees were its employees in name only, I can only conclude that Diamond actively intervened and engaged in the management of the subsidiary corporations during a portion of the taxable year. Diamond's employees managed the subsidiaries and made the business decisions of the subsidiaries until March 31, 1983, in the taxable year on which the tax base for tax year 1984 is calculated. I might agree with the majority if tax year 1985 were involved and Diamond

continued to operate in taxable year 1984 as it operated after March 31, 1983. However, I would reverse the BTA's decision as to the tax year before us, 1984.

Thus, I must respectfully dissent.